Good morning to one and all. We are going to start with United States versus, I hope I'm pronouncing these right, Churuk and Batsvinyuk. Did I get Batsvinyuk right? There's a question about how to pronounce it, so I'm excited at the moment. Please, of course, come to the podium. Mark Cedrone Good morning. May it please the Court, my name is Mark Cedrone. I represent Appellant Mikhailo Batsvinyuk in matter, I guess it's 16-1520. My co-counsel, Alan Talber, represents Mr. Churuk in the other related matter. I would like to reserve three minutes of my ten minutes for rebuttal. Your Honor, as the Court knows, through these consolidated appeals, there are approximately ten issues that the Court needs to address. One sentence... So let's start with the non-dismissal of the indictment, if I may. Yes, sir. So my question is, isn't this extraterritoriality issue a red herring? Because the RICO conspiracy has no overt act requirement, and the entire enterprise was in the United States. So if that's so, what would be the basis for the dismissal? Well, Your Honor, I think the basis, at least from Mr. Batsvinyuk's perspective, was a little bit more subtle, in that there were no allegations of him participating. There are no allegations. There ultimately was evidence at the trial, but there was no allegation of him participating in any of that. So why does that matter, though? Yeah. Why does that matter? If I'm a member of a conspiracy, and my only involvement is not in the United States, but the conspiracy is in the United States, it doesn't matter if there's no allegations that I did anything in the United States. Your Honor, I think we said in the brief there, in our opening brief, and frankly, I was actually prepared to rest on the briefs on this point, in deciding how to allocate time here. But I think, as we stated in the briefs there, there are, you know, as the Court will have to show. If you want to concede this point, we can move on to something else. I just would rest on the positions in the brief, sir. I'm not prepared to withdraw the issue at this point in time. And I believe, as I'm looking at it... How about this? How about thinking about this succinctly? Judge Cowan and I, and I can't speak for Judge Porter, have a problem with this, and we think there's no principle of law to support Mr. Butzvigniuk saying that just because he didn't commit something in the United States doesn't mean it shouldn't apply to him. So if you have one case that says we're wrong, tell me the wrong case, and we'll move to something else. No, Your Honor, I do not believe I have a case that says we're wrong. You know, the more substantial question that you pose is the limitation time of the conspiracy. Yes, sir. But you believe that's more of the essence of really what you're talking about, is it? Yes, in that there was no allegation that Mr. Butzvigniuk participated in the conspiracy in a... during the time frame... you know, within an appropriate statute of limitations time frame. Well, didn't the government... wasn't the charge to show that a conspiracy continued to exist during the limitation period? Wasn't that part of the charge? There were, I believe, two or three... actually, I believe four acts that were alleged in the indictment that would suggest that a continuation of the conspiracy into the limitations period. Yes, sir. Well, was that charge to the jury, and was there proof to show that it happened during that limitations period? Well, now we're saying that there was certainly evidence of certain conduct within the limitation period. Yes, sir. Okay. At trial there was, and that, in my view, sort of segues into the amendment area. Well, let's turn to something that's more interesting to me. Yes, sir. The non-hearsay aspect of your claim. Which there are several, sir, any in particular. Well, they're all of interest to me, but whether... The contested questions that were given to Ms. Jaschak about the credibility. Yes, sir. Why was that a proper non-hearsay? It was not. It's improper, sir. Well, it was offered for the truth. There's just no question about it. The truth being that there were threats made in 2007 or whenever they were, Ms. Jaschak was alleged to have said, claimed these threats occurred. It's sort of circular to say that this was somehow being only offered to corroborate her testimony, when to corroborate her testimony would be to offer the substantive matters for the truth of the matter of service. There are many cases that you never cited anything that showed that the actual cases that the authority specifying, that establishing that it was inadmissible recording. Well, the recordation itself was not challenged in a sense of an authentication. The recordation wasn't challenged. The question of whether a 2014 conversation, recorded or not, from somebody who is at a time when... Well, I guess the government may say that the conspiracy still existed in 2014 in light of their whole debt issue, but the point there is, and you're right, Your Honor, I didn't cite any cases because it's a simple Rule 801, 803 issue. And the judge continually told the jury that that was a reason why it was being offered. Your Honor, the court said that... They've limited charges, several limiting charges on that. He gave a limiting charge after it was admitted about two days later, that's correct. But that's the fact that he gave a limiting charge on it doesn't affect, it still was inadmissible. It's for the purpose of argument. Assume that you are correct. Yes, sir. That it was, in fact, offered for the truth of the matter. The court ruled otherwise, your adversary ruled otherwise. Sir. Now what? Now we're here. Is that a basis to vacate the convictions and send it back? In this case, it certainly is. That is, that piece, that one piece of... That one piece alone, in my view, is a basis to, and here's why. This all wraps into this whole statute of limitations issue. The vast majority of the conduct that was alleged and proven in this case occurred before the beginning of the limitations period in March of 2005. But I thought the key to your limitations period argument, besides these four pieces of evidence, was that the court put an undue or improper burden on your client. And I didn't get that, because as I looked at the instruction, it was very clear that the burden was on the government. And in fact, the instruction, and this is at 1992-93 in the appendix, and it's at the government's brief at 79, for RICO conspiracy, once the government meets its burden of proof to establish the conspiracy, it is entitled to a presumption that the conspiracy continued to exist until defendants demonstrate otherwise. Now, are you saying that that phrase, until the defendants demonstrate otherwise, is improper? In a context where a defendant is not asserting abandonment or withdrawal, yes. See, again, this is not an issue of, and that language comes from the jurisprudence, and it's the vast majority of these statute of limitations have to do with the concept of withdrawal or personal abandonment of the objects of the conspiracy. Here we were just alleging a matter of, a failure of proof, and this is why that particular, the erroneous admission of that phone call, in and of itself is a problem, especially, but then there are other evidentiary issues as well. Well, one step at a time, what is the basis, case law would be fine, what is the basis for saying that that's an improper burden placed upon your client? Justice Scalia's opinion in the United States, where the Smith, I believe, sir, I mean, where he talks about, I think he refers to this very concept as this, we are now find ourselves at the intersection of the statute of limitations and the concept of withdrawal from a conspiracy. They are separate concepts, in fact, I think this court, and I think I cited it in our brief in its comments on statute of limitations, actually recognizes that there is a distinction as well. I mean, we are talking here, again, there was no question, or I don't want to phrase it in the negative, neither appellant asserted an affirmative step back, withdrawal, abandonment from the conspiracy. What this was about was very simple, what were the time constraints in the indictment, and did the government sufficiently prove? Now, as a matter of rule 29 and legal sufficiency, yes, they certainly sufficiently proved conduct within the scope of the conspiracy. Then, when the issue was put before the jury, this is when the whole thing, at least in my opinion, went awry. And it went awry for several reasons, including the court's admission of this 2014 phone call for the purpose of corroborating four, I believe there were five alleged evidentiary instances within the limitation period, five out of 79. There's 79 overt acts alleged in the conspiracy, five of which are alleged to have occurred after March of 2005, the limitation period. Four of those derived from Nadia Yashuk, four. And it's those four that the government attempts to corroborate with this inadmissible phone call from 2014 at a time when the conspiracy, at least, you know, under my reading, should be, was long gone and wasn't in furtherance of the conspiracy. So that's the constructive amendment? Well, no, the constructive amendment goes otherwise. But again, the constructive amendment, how does an indictment get constructively amended? It gets it constructively amended by argument, jury instructions, or evidence. So what is the indictment in this case? The indictment in this case is a very clearly, temporally defined indictment, 2000, from as early as at least 2007, 2000 through, without any qualifications of at least through the spring of 2007. That's the indictment that Mr. Bozviniuk and Mr. Churik went to trial on. What we end up having to defend is an indictment where there are alleged acts of extortion that go into 2009 and 2011, and a whole change in a theory that the indictment never ended. In fact, if you look at the government's closing argument. But if the government is putting evidence in between 2005 and 2010, that's within the statute of limitations period. So what's the issue? The problem, sir, is because there was a general verdict rendered, we don't know what the jury found to bring the case into the statute of limitation. We don't know if the jury found, for example, that Nadia Yashuk was credible, partly because of the erroneous admission in 2014 phone call. When would you ever have that on a verdict? I'm sorry, sir? When would you ever have on a verdict that, you know, did you find this person credible? I mean, the conclusions of the jury tell you who they found to be credible or not credible. The question is whether the evidence was evidential. And what difference did the recordings really make, given the evidence indicating that the threats were part of a pattern of a similar type of conduct, you know, by your client and others going back to 2005? What it does is it improperly bolsters the credibility of the most important government witness in the case. Well, what about that, why should that evidence not be admissible by that? Just because evidence, I mean, we're all, I think we're dancing around, I think what we're doing here is we're talking about why is the evidence relevant. It still has to be independently admissible. The evidence was hearsay just because it's. Well, that's the question, whether it's hearsay. And that's, the judge ruled it was non-hearsay. It was given not for the truth, but for the showing that all these other incidents occurred. It was given. And the jury was instructed several times about that by the judge. And our position is very simply that that is a semantical distinction without a difference. Because for those, that evidence to have been corroborative as the government suggested was, it had to be offered for the truth of the matter asserted. But let me just suggest if we look. No, the government offered it to show the truth of the other allegations going back to 2005. They were trying to show that this, the allegations were true. Not that the testimony was true, but to show that, to buoy up the witness's testimony. If the evidence was properly before the court, then what is your argument other than there's a rule, a violation of the federal rules of evidence? That is my argument. There's a violation of the federal rules of evidence, and it should not have been. It wasn't. If there's a violation of the federal rules of evidence, it wasn't properly before the court, sir. With all due respect. But you don't have any case to say that this was improper. Your Honor, I don't think we need to go beyond Rule 801 and 803. It's an out-of-court statement that I believe was offered for the truth of the matter asserted and doesn't fit into any exception. The judge charged the jury this is being offered not for the truth of what was said. The judge instructed the jury several times with that limitation. So we have to conclude, I think, as a court, that the jury accepted, unless you can show that the jury did not accept the charge from the jury, that the jury followed the judge's instruction and that the verdict was based upon not the truth of what was said, but to shore up the incidence of the horrendous conduct that was going on with these people for years. And if the case were, if that issue were analyzed in a vacuum of just that issue and not how it likely and could have affected the jury's consideration of a constructively amended and erroneously instructed charge, that's where it's a problem. The problem is that by allowing that evidence into, allowing that in improperly, the fact that it's just corroborative and the fact that the judge says, a court says, I'm going to improperly admit this, but you can only consider it for this purpose. It's still improper. No, no, no, it's proper if it's admitted for, if it's admitted properly under the rule. And the rule of evidence allows it to be admitted, not for the truth, but for other reasons. And that's what the judge instructed the jury. Your Honor, I respectfully disagree that if something is not admissible, it could be admitted for some other reason. Well, if it's admissible, the federal rules of evidence for that purpose. Then I, Your Honor, then I apologize for not understanding the federal rules of evidence. All right. We'll get you back to him and move on. Good morning, Your Honors. Good morning. Alan Tolber on behalf of Yaroslav Churuk. I, as the court knows, I joined in the arguments of Mr. Cedrone. There are three independent arguments we've made on behalf of Mr. Churuk. And I'm prepared to address those in order. Our first issue we raised was with respect to an identification that was made of Mr. Churuk with respect to one of, with respect to one of the acts that were attributed to him as part of a conspiracy. This is the incident where one of the employees who fled or ran away from the Botsvinniks business was moved to Chicago, was with his girlfriend going to immigration court, and was approached and taken away, and basically taken away in her presence. At that time, there was no police report made. There was no identification process made. It was not until 15 years later, that was not until 15 years later, in 2015, right before trial, when Ms. Schuster, this individual's girlfriend, was interviewed and subjected to a identification process where she made an equivocal identification of Mr. Churuk. And we had moved, I think this was actually at trial because the identification was provided mid-trial, but we had moved to exclude this identification because it was unduly suggestive and not reliable. The courts have said that identifications can be admitted if they're reliable and untainted by suggestive ID process. We submit that it was both highly suggestive and unreliable. The 2015, she was shown a photo array, six photos. She immediately eliminates several of them as clearly bearing no resemblance of Mr. Churuk. In fact, the court made a somewhat cheeky comment that they don't, clearly the fillers could not be confused as Mr. Churuk's brothers. I think it was his way of saying they don't bear substantial resemblance. What do you make of the judge's statement concerning the photo ID that there was no significant differences, I think, in the size, the format, or the angle, or the overall appearance? I think that's just what the judge held as to the... I mean, that's a subjective characterization. That, you know, the arrays in the record, I will point out this fact, though. Well, he says that, though. He's saying there's a legitimate reason the jury could look at these photos and find that's true. Yeah, that's your point. Right, but he's the gatekeeper, and he should have excluded this. The photo was grainy. It was clearly different. It was clearly different in quality in two significant ways. It was grainy. I don't understand. If that's his assessment, then why would he keep it out? Well, I think the assessment was an error. I mean, I think he made that judgment. I think his judgment's wrong, and that's something this court can determine. But what's important here is that the judge made the determination. It was not disputed. The government did not dispute it. The witness did not dispute it. The agent did not dispute it. The court looked at it and made a judgment. We submit that that judgment was wrong. Was that the only identification of your client in court? There was no in-court identification. This was just this photo array. She said she could not make an in-court ID. They did it based on the photo array. And the photo array, her identification of the photo. Now, in the motion, the agent and the government said she was identified. She identified him. This was there. She didn't testify at the motion. She testified at trial. The agent said he was identified. When we get to trial, it was far from an unequivocal identification. And I'll just read this because it was shocking when I went back and looked at the record. She says, again, not being absolutely right because it was been many years ago. If that time I would see the pictures 15 years ago, I would recognize him 100%. Right now, I can't. I don't know if that's the picture taken that time or one where they're older. To me, it looks like this is, would be, they would be actually older at this time of their life. And people change, too. So I cannot say. I would be lying if I would say it's 100% those people. So even when we get to trial, she acknowledges under oath that she can't actually, that was not a, that was an equivocal ID. So initially. The jury is able to assess an equivocal ID. That happens every day. That's, it's perfectly, it's what we're left with is to argue it to the jury. But the judge, the court is the gatekeeper. And the courts have clearly said a suggestive ID that does not have independent reliability. And I'd like to address that point as well. But he said more than that. He said something about that. He said that the two challenged photographs bore a sufficient resemblance to your client. That's what his gatekeeper analysis was. There were two. So your argument basically is that the judge abused his discretion as the gatekeeper. That is correct. He abused his discretion. And it's just for this court basically to decide that. And I would point out this, that the other side of this is that the court needs to look at the reliability of the identification separate and apart from the actual identification process. You know, the five factors that the courts have identified which would, which might cleanse the suggestiveness, all of those factors weigh against reliability. So you're talking about, number one, opportunity to view. So you have two strangers. Ms. Schuster says two strangers approach her and Mr. Lisvignik. Unexpected, not expected to be seen. The incident takes 15 seconds. It's a fleeting and startling experience. Two, the degree of attention. She admits to being scared. She's focused on two separate individuals. So you're 15 seconds and it's occurring with two individuals. That's the, that addresses the degree of attention. Three, the detail of the description prior to the ID process. And this is really important. There was no ID process in 2000. She gives no description. The police aren't called. When she's asked in 2015 prior to the photo array, what does, how does she describe them? Two men who looked Ukrainian and like thugs. One was older, one was younger. That's the extent of the description. There's no detail. I don't even know what looking Ukrainian means other than to be, you know, a European Caucasian. But I don't even know. That's essentially a meaningless description. What about the level of certainty? She says, under oath at trial, she admits that she, that her description lacks certainty. Under oath she says that. The fifth factor is what's the time between the incident and the confrontation? 15 years. 15 years she saw somebody 15 years ago for 15 seconds who she didn't know in a highly aroused situation. To suggest that 15 years later that that, that that ID could be reliable is. But your argument here to us, we're an appellate court, is, I mean, is that really an argument that you would make to a trial jury about the evidence before it? When, when it's improper. Of course we would. We have no choice. We have to make that argument. But the trial judge is the gatekeeper. And when it's a suggestive process, and the courts have said a suggestive ID is a violation of due process. So there is a due process gatekeeping function that the trial court, this should, this ID should not have been in there. It should not have been in the trial. This, this incident should not, his identification as being a bomb should not have been in the trial in the first place. So that, that was our first issue. I can address why we thought that that was prejudicial and warrants a new trial. Mr. With your, with your brief remaining time. Yes. I see I'm already past. I don't know if the court wants me to address another issue or not. I wanted to actually listen to what I was going to say. Sorry. I, what I was going to say is in your brief remaining time, pick the most important thing you want to tell us. That's, that's fine. In 30 seconds or less. 30 seconds or less. It may generate questions. You may have more time at the podium. I would say that, that the second most important issue is the, you know, the vast continent of hearsay that was admitted by the trial judge concerning, you know, countless, countless other bad acts by, by the, by the co-defendants. It was, it was, it was essentially became in some respects, the tail wagging the dog, certainly with respect to Mr. Chirrut, who, for which there was a great paucity of evidence. There were two witnesses who described bad deeds by him. Most of the, most of the witnesses said he wasn't involved in bringing in the illegal entry. Every conspiracy, any of us have been involved prosecuting, overseeing. There's always one person who there's less evidence about than other people. And, and, and particularly unique about that. And, and, and it was that much more prejudicial to Mr. I mean, that, that's, you know, with respect to his role in this case, the day in, day out drumbeat of the, of all of this hearsay, which really was not required because the purpose for which the government sought to offer it, which was this, this atmosphere of fear. There is nothing that we can do with a claim of a lot of hearsay coming in. Well, courts have said, and the courts have reversed cases in, in, in those situations where it's so overwhelming and so prejudicial and, and, and, and, and marginally needed. Because the government could, the government was, all of the witnesses talked about aggressive, assaultive, abusive acts. I'm unaware of any case that says the government put too much evidence. It's not a question of. And they shouldn't have. It's not a question of too much evidence. It's the, it's, it's the quantity and the nature of the evidence, which became quite, in our view. I mean, I understand the hearsay argument. We're, we're, we're, we're, we certainly understand the argument that's posed. That's, that's all I have. Thank you. Thank you. May it please the court, counsel. I am Daniel Velez for the United States. There were quite a few issues discussed, especially with Mr. Cedrone, involving the statute of limitations, involving the 2014 recorded call. Unless the court would like me to start in any particular issue, I suppose I will begin with the jury instructions in this case. Why should we conclude that the recordings were inadmissible hearsay? You should not. For the truth, why, why shouldn't we? And offered for the truth of what they were stating, not for what they, for any other reliable reason. Well, they were not offered for the truth. And part of the difficulty in this case is that we are talking about a recorded conversation. And to this day, the defendant has not identified which particular statements in that conversation he thinks is hearsay. We could, you know, in theory, go line by line through that conversation. And there is nothing that the co-conspirator, Omelion Botzvinnik, said that the government would offer for the truth of the matter asserted. Now, Yashuk was on the stand. So her statements in this conversation are clearly not hearsay. She is subject to cross-examination. And the purpose of introducing this recording was to bolster Yashuk's credibility. Because in this particular case, she is not the one who initiated the call. It was Omelion Botzvinnik who initiated the call. She wasn't even aware that she was being recorded. So there are certain built-in indicia of reliability regarding her credibility. She is confronting the actual threatener, who happens to be a co-conspirator, about the threats that she had received, in which the government alleged occurred in this case. So her statements, when she's confronting him about, do you remember when you said you were going to cut me up? Do you remember when you said you were going to cover us in blood? All of that has certain built-in indicia of reliability. And so it's really her statements in that conversation which the government introduced the tape to support. Obviously, the government had to prove that there were threats made because extortion was one of the predicate offenses. So in a matter like this, it was perfectly admissible. There was no hearsay being admitted, and it was not offered for the truth of the matter asserted by Omelion Botzvinnik. So it was completely proper and not an abuse of discretion for the district court to admit that tape. So in each instance of the alleged hearsay, the primary evidence that it was supposed to be corroborating was Yashuk's or another witness's live testimony? Yes. In fact, Yashuk, it was through a streamed deposition in this particular case. But yes, her testimony was that starting in 2002, she started to receive phone calls and threats from Omelion Botzvinnik. And at the same time, she received some other phone calls, and then he actually visited her in later years into 2005. The defense in this case, besides statute of limitations, was that all of the government witnesses were liars. This is the way the opening statements started, and this is the way the closing statements ended. Her credibility, as Mr. Cedrone stated, was very important because it was the threats made to her which really maintained this case within the limitations period. So of course the government has the obligation and the responsibility to make sure that that is credible evidence and that the jury would find the evidence and the witnesses credible. So in this particular case, she testified regarding those threats, and this recorded phone call corroborates her testimony because she is actually confronting the person who made those threats, who happens to be a co-conspirator. And there's actually another level of reliability here as far as Omelion Botzvinnik is concerned. Although arguably the conspiracy may be over by this time, when he contacts her, any statements that he makes could be statements against his penal interest because this could be viewed as an obstruction on his part, a new and separate obstruction, because he's asking her to have witnesses change their testimony in order to assist him in 2014. Although it's not admissible for that purpose, it does provide a certain level of reliability given the fact that these are statements against his penal interest as far as obstruction is concerned. Your adversary's position is that how could we possibly uphold a photo ID that occurred 15 years after the purported witness briefly saw the person she purportedly identified? How could the judge allow such a thing to occur? It's incomprehensible that such could be a reliable identification. Well, the reliability and the admissibility are two different things. So in this case, as counsel stated, the district court is, in fact, the gatekeeper. And it's a two-step process. So there has to be a determination whether or not the process was unduly suggestive, thereby tainting the identification. Only if there's a finding of undue suggestibility, then we go to the second totality of the circumstances type of analysis. But in this particular case, as in any case, the district judge takes a look at the process. There was an entire hearing on it. The agent testified as to exactly how these photographs were laid one by one before the witness. And the agent testified about the witness's certainty in picking one photo regarding one defendant, who is now deceased, and the difficulty she had picking out the actual defendant who was on trial. That is not a suggestive process, and the court performed its function perfectly. And it made its own findings regarding the photographs in that they were not significantly different. And so once that's admitted and it's not a suggestive, unduly suggestive process, then it is up to the jury. Counsel was free to argue to the jury and to cross-examine the witness herself about the reliability of her identification. It was all completely proper. We go to the debt collection theory for a minute. Yes. Is it the government's position that the conspiracy remains ongoing today because there are uncollected debts? The quick answer is no, but I submit to Your Honor that that's a red herring argument. There's no need to determine whether or not this conspiracy exists today. The issue is whether the conspiracy reached into the limitations period. And that is what we proved. So when the defendant at the trial court was arguing that this is saying it's in perpetuity, it's in perpetuity, that is a red herring argument because it doesn't matter. Nobody cares if it's in perpetuity. What matters is whether or not the government proved that the conspiracy reached into the limitations period. It matters if the way that you reach into the statute of limitations period is the same way that you would get to an ongoing conspiracy today, right? If it's the same argument for both, then it's not a red herring anymore. Well, it still is because the jury wasn't asked to find whether it goes into perpetuity. This is not a finding that they had to make. All they had to make was, was this conspiracy existing during this period? And this kind of folds into and segues into the defendant's claim that the jury had to find particular overt acts and that we don't know what overt acts. Well, that is really a mischaracterization of RICO conspiracy law. Yes. Absolutely. Pretty straightforward. Going back to something Judge Porter raised on the existing debts, the existence of outstanding debts. Yes. Obviously, they reached into the period, but they weren't specified in the indictment, an argument that your adversary focuses on. Is that of any particular importance? Well, I would disagree with your honor that it was not referenced in the indictment. In fact, a careful reading of the indictment would show that debt was the root of every single one of the predicate offenses that were charged. The debt was initiated when they were first recruited in Ukraine and their travel and visas were paid for by the defendant. $10,000, that's not a point. Yes. Yes. And so the debts are the root of the immigration offenses. The debts are the root of the extortion because they're collecting on the debts. The debts are the root of the, sorry, I'm blanking on the other predicate offenses. All of the immigration offenses and, oh, I'm sorry, the peonage and involuntary servitude. Peonage, of course, is slavery tied to a debt, right, and then involuntary servitude. They kept working because of their sense of obligation that they could not leave until they paid their debts. The debts were the root of the extortionate conduct in Ukraine. Where are these people who ran away? If you don't bring them back, you're going to have to pay the debts. I'm going to put your daughter into prostitution unless you pay these debts. So the allegation that somehow the issue of debts extending the statute of limitations is really a mischaracterization because it doesn't itself extend the statute of limitations. It's an element of the extortion, and we show that the extortion existed within the limitations period. Just to shift the questions here a little bit, the district court charged a jury that once they establish, the government established a conspiracy that it's presumed to exist until it's proven otherwise. Yes. Doesn't that shift what the Smith leading case on conspiracy says is the obligation of the government? Yes, and the court clearly stated that the government's burden in this case was to establish a conspiracy within the limitations period. That was clear. The jury was instructed that only if the government made that showing, only if it showed that the conspiracy existed, would the burden shift to the defendant in order for him to prove one of two things. One, that the conspiracy ended prior to the limitations period, which is a lack of evidence, or two, that he withdrew. And as far as the withdrawal argument is concerned, I submit that's also a bit misleading. Well, it seems to me that that stated by the court shifts to what Smith established, the burden of proof to the defendant. It put the defendant to the proof that the conspiracy was still in effect, and it was not the defendant's obligation. It was your obligation to show that the conspiracy existed at the time of the evidence. Yes, and that is exactly what was instructed to the jury. And then the court stated that once the government meets its burden of proof to establish conspiracy, it is entitled to a presumption that the conspiracy continued to exist. Well, I don't think that's correct under Smith. But you have to prove the conspiracy existed at the time that you claim the evidence shows that there was a fruition of the conspiracy's aims and objectives. The defendant does not have to prove that it didn't exist at the time that it happened. No, well, you're right in the sense that the defendant doesn't have to prove that in its direct case. But if it's claiming a statute of limitations defense and the government has proven that the conspiracy is within the limitations period, then the burden does shift to the defendant to show that it did not continue into the limitations period. The defendant claims that Smith somehow only deals with withdrawal. And so therefore, it's inapplicable in this case. I submit that's an erroneous reading. What the Smith's court found was that withdrawal is withdrawal and a lack of evidence or a conspiracy ending prior to limitations. Period are two sides of the same statute of limitations. But the charge of the jury seems to be to be at odds with Smith and what you're arguing. The judge said that once they established a conspiracy. That it exists until the defendant proves it's no longer in existence. Yes. And you're saying that conspiracy exists forever. No. What the court instructed the jury was that they had to find that the conspiracy existed within the limitations period. Once they make that finding or if they make that finding, then the burden shifts to the defendant to show that it did not exist in the limitations period. So this is that has nothing to do with a conspiracy existing in perpetuity. The judge said that the jury is continued to the conspiracy exists. Until demonstrated otherwise. Until that's the actual words out of the. Until demonstrated otherwise. Yes. And that is consistent with our model. Third Circuit instructions. It says that once it has a model, that's a model instruction. It's consistent with the model instruction. The model is consistent with it, but I don't think that's the model instruction. Well, the model instruction says that the conspiracy, because it's a continuing offense. Once it is proven that the government is entitled, it is deemed to continue until there is an affirmative showing to the contrary by the defendant. That's not what the judge charged a jury. But it's the it's equivalent. He may have not used the same words, but an affirmative showing is not significantly different from a presumption. But even in the event, even if it's your argument that the what was charged to the jury is actually a lower burden for the defendant to meet. I mean, what what Judge Cowan just read to you or I'm sorry, what your exchange with Judge Cowan said that the model jury instruction actually required something affirmative on the defendant's part in response to a showing that actions occurred within the limitations period. The actual charge says the defendant just has to demonstrate otherwise. Isn't that a lower burden than the model jury instruction? I don't know if it's a lower burden, but it certainly shifts the burden to the defendant. Well, in each instance it does, as the law seems to support. Yes. And because the defendant was asserting specifically the statute of limitations, that is an affirmative defense. And going back to common law, when you insert an excuse me, an affirmative defense, it is your burden to show it. But in this particular case, that burden doesn't kick in until after the government has already satisfied its burden. And that was what the court instructed the jury. And it was a proper shifting at the time. The defendant's claim that he didn't argue withdrawal or that he was only arguing a lack of evidence within the limitations period is a mischaracterization of affirmative defenses and statute of limitations. Thank you very much. Mr. Cedrone, we'll hear you on rebuttal. Just following up on the point of discussion, the most immediate point of discussion, the Third Circuit in its commentary to the general conspiracy charge, which let me focus the court there. There is a RICO conspiracy instruction and RICO instructions in the model charge. However, with respect to the RICO conspiracy, there's a subtle difference between that and the 371 conspiracy, and that is that there's no overt act requirement. This court, in its model instructions, has specifically said, other than that distinction, everything about a 371 conspiracy applies. So now if we go back to the model instructions with respect to a 371 conspiracy, and in particular, Section 8.01 of the model instructions, where they're talking about the interplay of the statute of limitations and who has what burdens of proof. This is what this court has said in interpreting Smith and Grunewald. The statute of limitations is an affirmative defense, and therefore, the burden of proving the statutory period ran before the indictment is ordinarily on the defendant, citing Smith. Then the court goes on in its commentary to say, the court in Smith acknowledged, however, that, quote, we have held the government must prove the time of the conspiracy offense if the statute of limitations is raised. This is the, and then they cite Grunewald. I don't understand your argument. The two preceding paragraphs to the one your adversary just cited to, I think, capture the law pretty well. The preceding paragraphs say, to find the defendant guilty of conspiracy to violate RICO, you must find the conspiracy charge in the indictment continued into the limitations period, that is, between March 17, 2005 and March 17, 2010. Does defendants, if the conspiracy, right, the defendants allege that the conspiracy, if it existed, ceased to exist before March 17, 2005. If you find the conspiracy ceased to exist before March 17, 2005, then the defendants must be found out guilty. For RICO conspiracy, once the government meets its burden of proof to establish the conspiracy, it's entitled to a presumption that the conspiracy continued to exist until the defendants demonstrate otherwise. Now, are you saying that those three paragraphs don't capture the essence of the model jury instruction and that they are error as a matter of law? When read, you, right, I mean, how many times has this court said we look at jury instructions as a whole? So now your honor is looking at two paragraphs. You need to look at the next paragraph, which is the one that Judge Cowan has been talking to Mr. Velez about for about five minutes. This is where this whole thing went awry. Conspiracy is a continuing offense. You may consider each and all of the conspirators' actions in furtherance of the conspiracy, providing the conspiracy continued until the limitations period and until there is some affirmative showing that it has ended. This is the burden shifting that is not recognized by Smith, Grunewald, or as far as I could tell, any other case. And again, this is not about an affirmative issue of withdrawal, and it's not a red herring. The defense claim was the government did not prove the temporal constraints of the conspiracy that was alleged, which we've not even spoken about how the allegation was substantially altered and constructively amended. But that's a whole separate issue. But we know that through the evidence and argument, as Judge Porter recently noted, and through the government's theory, one might suggest that the conspiracy that was alleged to have ceased in 2007 still continues today. It's really not a red herring. It's exactly the most important aspect of the case. Do you disagree with this basic proposition that it is the defendant's burden to support its affirmative defense? Do you disagree with that? I absolutely 100% agree with that proposition. Yes, sir. So if you agree with that proposition, and in this case, the government believes that it showed that the conspiracy existed into the statute of limitations period, then do you agree with the following proposition, that at that point, if the defendant is going to prove its affirmative defense, the burden must shift to the defendant? If the government proved that the statute of limitations was satisfied, then... Right, but that's a separate argument. I understand. If you want to argue that the government didn't prove its case, that's fine. But what we're talking about right now is, is it proper for the burden to shift once the affirmative defense has to be shown? If you are talking about not... And again, if you're talking about affirmatively saying, I withdrew from the conspiracy, that's on the defendant. If the claim is that the government did not prove the conspiracy existed, then that is not something the defendant has to show. The government still always has that ultimate burden. Absolutely. That's not a question that is on the table, whether the government has the burden to prove that the conspiracy existed within the statute of limitations period. That's not an open issue. That is actually the... With all due respect, sir, that is the issue that's on the table by the erroneous jury instruction given by the district court. I'm good. Thank you. The court thanks counsel for its arguments this morning, and we're going to take this matter under advisement.